Monson
*v.*
Hunt.

## Monson *against* Hunt and another.

Where the defendant, in an action of trover for taking the plaintiff's goods, justified under a military warrant against the plaintiff, issued by the defendant, as captain of a company of militia, in which the plaintiff was enrolled; and to prove his authority, the defendant offered in evidence a document, which he claimed to be his commission; this document was in the usual form of military commissions, purporting to be issued by the captain-general and commander-in-chief in and over the state, countersigned by the secretary, and authenticated under the state seal; it was held, that this was admissible as a valid commission, to prove the authority claimed.

The act of the General Assembly, in accepting and approving the choice of a company officer in the militia, evidenced by a commission issued thereupon by the governor, is conclusive as to the legality of the previous proceedings.

THIS was an action of trover for 40 yards of broad-cloth.

The cause was tried, on the general issue, closed to the court, at *Litchfield, October* adjourned term, 1845, before *Church,* J.

The plaintiff having proved the taking of the cloth, mentioned in the declaration, by the defendant, *Witherell,* a legal constable, by direction of *Hunt,* the other defendant, the defendants claimed, that such taking was by virtue of a warrant, issued by *Hunt,* as the captain of the 6th company of the 13th regiment of infantry, in the militia of this state, against the plaintiff, a private enrolled in such company, to collect of him a fine imposed for non-appearance to perform military duty, on the 16th of *September* 1842. To prove that *Hunt* was the captain of that company, and authorized to issue the warrant, they offered in evidence a document, which, as they claimed, was his commission, as captain. The introductory part of this instrument was as follows : " CHAUNCEY F. CLEVE-LAND, Captain-General and Commander-in-chief in and over the State of *Connecticut,* in the *United States* of *America—* to *Edward P. Hunt,* Gent. *Greeting :* You being, by the General Assembly of this State, accepted to be captain," &c. The body of the instrument was in the usual form of a military captain's commission, with regard to which no question was made. The concluding part was as follows : " Given under my hand, and the public seal of the State, at *New-Haven,* the 20th day of *May,* in the year of our Lord,

1842. C. F. CLEVELAND. By his Excellency's command, *N. A. Phelps*, Secretary." In the margin, the seal of the state was impressed. To the admission of this document in evidence, the plaintiff objected ; but the court admitted it.

The defendants also offered parol evidence to show, that the plaintiff, on the 16th of *September* 1842, resided, and for more than a year before that time had resided within the local limits of the 6th company of the 13th regiment of infantry, and was liable to do duty therein. They also offered the orderly book of that company, showing the enrollment of the plaintiff as a private therein, more than a year prior to the 16th of *September* 1842. They also offered parol evidence to prove, that the plaintiff had, during that period, done duty therein ; that he had neglected to appear on said 16th of *September ;* that he was notified in writing of the imposition of a fine of four dollars upon him, as stated in the warrant ; and that no appeal was made from the imposition of such fine. To all this evidence the plaintiff objected, on the ground that these facts ought to appear upon the orderly book of the company, and could be proved by that alone ; it being admitted, that such orderly book did not contain any record of the facts so sought to be proved by parol. The court overruled the objection, and admitted the evidence offered.

The plaintiff then offered testimony to prove, that the order for the warning of the company for the choice of captain, at the time when *Hunt* was chosen, was given by Col. *Hollister*, when *Anson Rogers* had previously been appointed and commissioned as colonel of that regiment, and acted as such, and had not been superseded or removed, unless the appointment of *Hollister* had that effect. The plaintiff also offered testimony to prove, that at the time when *Hunt* was chosen captain, said company was warned, by the adjutant of the regiment, and was led to a choice by Col. *Hollister;* that in proceeding to a choice, the company, by order of Col. *Hollister*, marched round, and named, *viva voce*, the individual of their choice for captain ; that upon the first choice thus made, *E. S. Hopkins*, a member of the company, was chosen ; that he, being absent, and no notice given to him of such choice, the company thereupon, by order of Col. *Hollister*, again marched round, and in like manner made choice of —— *Crossman*, a member of the company, who was also absent, and had no

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1846.*

Monson
*v.*
Hunt.

notice of such choice ; that the company then again marched round, and in like manner, made choice of —— *Davidson,* a member of the company, who was present, and did not decline ; that the company again marched round, and thirty of them, in like manner, declared said *Davidson* to be the man of their choice ; and five of them declared *Hunt* to be the man of their choice ; and that thereupon Col. *Hollister* declared *Hunt* to be duly chosen captain : that *Hunt* was present during all these transactions, but was not then a member of the company, nor liable to do duty therein : that thereupon Col. *Hollister* made return to the General Assembly, that *Hunt* was duly elected captain of said company, in all respects according to law ; and that thereupon the General Assembly appointed him captain.   To all this testimony the defendants objected ; on the ground that the commission of the captain could not be thus collaterally attacked.   The court, *pro forma,* rejected the testimony thus offered by the plaintiff, and found the issue for the defendants.

The plaintiff thereupon moved for a new trial, on the ground of error in the several rulings of the court above stated.

*Church,* in support of the motion, contended, that *Hunt,* by whom the fine was imposed and the warrant issued, was not captain, and had no authority to impose the one, or to issue the other; consequently, the justification set up had nothing to rest on.   To establish this general position, he insisted,

1. That *Hollister,* who gave the order for warning the company, and led them to a choice, had no authority to do so. *Rogers* was then colonel of the regiment ; and what *Hollister* did, was an unauthorized interference and void.   In the first place, the organization of our militia depends upon the act of Congress ; and an officer above the grade of captain, once appointed pursuant to that act, cannot be removed by the General Assembly.   If the General Assembly cannot do this directly, it cannot do the same thing in effect, by superseding the officer.   Secondly, if the General Assembly had power, by a legislative act or resolution, to vacate an office already filled, the mere appointment of another person to that office, which is not a legislative act, does not change the law ; and is simply a nugatory proceeding.

2. That if *Hollister* was the lawful colonel of the regiment,

still *Hunt* was never captain, not having been duly chosen. A military captain derives his authority, first, by the choice of a majority of the voters in his company, and secondly, by the approval of the General Assembly. If there is no choice by the former, there is nothing for the latter to act upon. Here was the want of that which was essential to give the General Assembly jurisdiction of the matter.

*Litchfield,*
June, 1846.

Monson
*v.*
Hunt.

3. That the document produced by the defendants, does not preclude the plaintiff from showing, that *Hunt* was no captain. In the first place, if that was a regular and formal commission, the plaintiff might show, that the governor had no authority to issue it. You may show that even a judgment is void, by showing an utter want of jurisdiction. But secondly, the document in question is not a commission. The constitution of this state provides, that all commissions shall be in the name and by authority of the state, sealed with the state seal, signed by the governor and attested by the secretary. *Const. Conn. art.* 4. *s.* 11. The statute provides, that captains shall be chosen by their respective companies, and, if approved by the General Assembly, shall be commissioned by the governor. *Stat.* 430. *tit.* 69. *c.* 1. *s.* 7. (ed. 1838.) This document is not in the name of the state. It does not purport to be signed by the governor, but by a person calling himself Captain-general and Commander-in-chief in and over the state. Nor does it appear to be countersigned by the secretary of this state, but by a person calling himself secretary—it may be of an insurance company, or a caucus. It is true, that by the constitution and laws of this state, the governor is captain-general and commander-in-chief of *the militia,* but not of *the state* as the person signing this document styles himself.

*F. Bacon,* contra, after remarking that it was sufficient for his purpose to establish two positions only, contended, 1. That the document in question was in form a legal captain's commission. The form is the same as that which has been used immemorially—without any variation, at least, that affects this case. At any rate, it is a commission under the seal of the state, signed by the captain-general of the militia, who is the same person as the governor, and countersigned by the secretary. This purports to be a regular military commission according to the constitution and laws of the state.

*Litchfield,*
*June, 1846.*

*Monson*
*v.*
*Hunt.*

2. That it being such, the court will not go back of it, to enquire into the previous proceedings. The proper time to go into this enquiry, would have been before the military committee of the General Assembly, on a remonstrance against the acceptance of the return ; but after the return has been accepted, and the person named therein has been duly commissioned, in pursuance of the concurrent action of both houses, the commission cannot be collaterally attacked. It will protect the party acting under it, so long as he acts within the scope of his powers.

*Seymour,* on the same side, was stopped by the court.

CHURCH, J.    Some of the questions arising upon this motion, have been waived, on the argument ; and the remaining one is, whether *Hunt,* the defendant, was captain of the company which he assumed to command, and had power, as such, to impose the fine, for the collection of which the plaintiff's property has been taken.

The plaintiff objected to the captain's commission, which the defendant offered in evidence, as conferring upon him the authority claimed ; because, as he says, the constitution of the state, as well as the statute law on this subject, empowers only the governor to issue commissions to militia officers; whereas this commission purports to be issued by the Captain-General and Commander-in-chief in and over the State of *Connecticut*—an officer unknown to the constitution. " *Qui hæret in litera, hæret in cortice.*" The objection is to the letter, and not to the substance. The constitution constitutes the governor the captain-general of the militia of the state, and the statute superadds to this the title and power of commander-in-chief. To be commander-in-chief of the militia of the state, is equivalent to being commander-in-chief of the state ; as the militia is the only military force of the state. The governor, therefore, signed this commission in his military capacity ; and it being a military document, it was thus appropriately authenticated, with the addition of the seal of the state, and attestation of the secretary. And such has been the form in which these commissions have been issued, ever since the revolution, at least.    (*a*)

(*a*) The form of the commission of a captain in the militia of this state, was established, by a concurrent vote of both houses of the General Assembly, at a

This document was properly admitted in evidence; and if not conclusive proof that the defendant was captain, it was sufficient, unless it could be shown, that it was granted without authority, or by mistake. The plaintiff claimed to be

special session in *November* 1776. The form then prescribed, has the following caption: "JONATHAN TRUMBULL Esq. Captain-General and Commander-in-chief of the state of *Connecticut* in *America*." The body of the commission, according to the prescribed form, was much like that now in use, *mutatis mutandis ;* was signed with the name of the governor; and was countersigned thus : " By His Honour's command,

―――― Secretary." In *May* 1777, the title of the governor was changed by law, from " His Honour," as it had been from the earliest period of our government, to " His Excellency." At a session of the General Assembly in 1819, the first session after the adoption of our state constitution, an act was passed prescribing the forms of commissions for certain *civil* officers ; but no alteration was made in the forms of *military* commissions.

From the specimens of ante-revolutionary commissions for military officers in the collections of the CONNECTICUT HISTORICAL SOCIETY, it appears, that for a century and a half at least, they have undergone very little change, in form or substance. One of the earliest in the possession of the society, was given by *John Winthrop*, (otherwise called *Fitz-John W.*) the second governor of *Connecticut* of that name, to *Cyprian Nichols*, great-grand-father of the respectable gentleman of that name, now residing in the city of *Hartford*. That commission runs thus:

" JOHN WINTHROP Esq., Governour and Commander-in-Chief of Her Majesty's Colony of *Connecticott* in *New-England,* To *Cyprian Nichols, Greeting.* You being, by the General Assembly of this Colony, accepted to be Captain of the Train-Band on the *South* Side of the Riverett in the Town of *Hartford ;* Reposeing Special Trust and Confidence in your Loyaltie, Courage and Good Conduct, I do Appoint and Impower you to take the said Train-Band into your Care and Charge, as their Captain, Carefully and dilligently to discharge that Trust, Exercising your Inferiour Officers and Souldiers in the use of their Arms, according to the discipline of Warr, keeping them in Good Order and Government, and Commanding them to obey you as their Captain for Her Majesty's Service ; and you are to observe all such Orders and Directions as from Time to Time you shall receive, either from me, or from other your Superiour Officer, pursuant to the trust hereby reposed in you.

" Given under my hand, and the Seal of this Colony, in *New-London,* the two and twentieth day of *October,* in the first year of the Reign of our Sovereigne Lady *Anne,* by the Grace of God, Queen of *England,* &c. *Annoque Domini,* 1702.

By his Honour's Command,                    J. WINTHROP."

     *E. Kimberly,* Secretarye.

On the left margin of the commission is impressed the seal of the colony in red wax, having the same motto as the present seal of the state, but bearing on its shield, instead of three vines with a few bunches of grapes, a *vineyard* loaded with fruit.

The introductory and concluding parts of a few other commissions, with the names and offices of the persons commissioned, issued by subsequent governors, will here be given, arranged chronologically :

*Litchfield,*
*June, 1846.*

*Monson*
*v.*
*Hunt.*

ready to show this, and offered evidence to prove, that *Hunt* was not legally chosen captain, by the members of the company; first, because, at the time when Col. *Hollister* ordered the company to be warned for the choice of a captain, *Anson*

"GURDON SALTONSTALL, Esq., Governour and Commander-in-Chief of His Majesty's Colony of *Connecticut* in *New-England ;* To *Joseph Martyn,* Gent. *Greeting.* You being, by the General Assembly of this Colony, Accepted to be Lieutenant of the ———— Company or Train-Band in the *North* Parrish in the Town of *Lebanon ;* Reposing Special Trust." &c. . . . .
"Given under my Hand, and the Seal of this Colony, in *Hartford,* the 22d day of *May,* in the Tenth Year of the Reign of Our Sovereign Lord, *George,* King of *Great Britain,* &c., *Annoque Domini,* 1724.

By His Honour's Command,       G. SALTONSTAL
     *Hez. Wyllys,* Secr.

"JOSEPH TALCOTT, Esq., Governour and Commander-in-Chief of His Majesty's Colony of *Connecticut* in *New-England*; To *Giles Hooker,* Gent. *Greeting.* You being, by the General Assembly of this Colony, Accepted to be Lieutenant of the First Company or Train-Band in the town of *Farmington ;* Reposing special Trust," &c. . . . . "Given under my Hand, and the Seal of this Colony, in *Hartford,* the 22nd day of *May,* in the 4th Year of the Reign of Our Sovereign Lord, *George* the Second, King of *Great Britain,* &c. *Annoque Domini,* 1734.

By His Honour's Command,       J. TALCOTT."
     *Hez. Wyllys,* Secr.

"JONATHAN LAW, Esq., Governour and Commander-in-Chief of His Majesty's Colony of CONNECTICUT in *New-England,* To *Thomas Grant,* Gent. *Greeting.* You being, by the General Assembly of this Colony, accepted to be Lieutenant of the Company or Train-Band of the Town of *Windsor ;* Reposing Special Trust," &c. . . . "Given under my Hand, and the Seal of this Colony, in *New-Haven,* the 29th day of *October,* In the 17th Year of the Reign of our Sovereign Lord, *George* the Second, King of *Great-Britain,* &c. *Annoque Domini,* 1743.

By His Honour's Command,       J. LAW."
     *George Wyllys,* Secr.

"THOMAS FITCH, Esq., Captain-General and Governor-in-Chief in and over His Majesty's *English* Colony of *Connecticut,* in *New-England,* in *America ;* To *Hugh Ledlie,* Esq. *Greeting.* By virtue of the power and authority to me given, in and by the Royal Charter to the Governour and Company of the said Colony, under the Great Seal of *England,* I do, by these Presents, reposing Special Trust," &c. . . . . "Given under my Hand, and the public Seal of the said Colony, at *Norwalk,* the twenty-fourth day of *March,* in the 33rd Year of the Reign of His Majesty, King *George* the Second, *Annoque Domini,* 1760.

By His Honour's Command,       THOMAS FITCH."
     *George Wyllys,* Secret.

JONATHAN TRUMBULL, Esq., Captain-General and Commander-in-Chief of his Majesty's Colony of *Connecticut,* in *New-England.* To *John Johnson,* Junr., Gent. *Greeting.* You being, by the General Assembly of this

*Rogers,* who had formerly been the colonel of the regiment to which this company was attached, had not resigned, nor been deprived of his command, but was still the colonel-commandant. And secondly, because the proceedings of Col. *Hollister,* in leading the company to the choice of a captain, as detailed in the motion, were in violation of law, and subversive of the rights of the company to elect its own officers; and that *Hunt* was declared chosen, upon receiving only five votes against thirty opposed to him.

As to the first reason; it was conceded, that *Hollister* appeared *de facto* as colonel, and as such acted in issuing his orders to warn the company for the choice of a captain, and in conducting the election, and in making his returns to the General Assembly. He was also recognized and obeyed as colonel, by his subordinates; and his return of the proceedings to the General Assembly was received and acted upon. He acted, therefore, *colore officii,* and under strong pretence and probability of right, and not as a naked usurper of office. Thus he was colonel *de facto,* and his public acts, as such,

Colony, accepted to be Ensign of the tenth Company or Train-band, in the 22nd Regiment in this Colony; Reposing Special Trust," &c. . . .
" Given under my Hand, and the Seal of this Colony, in *Hartford,* the 18th Day of *May,* in the 15th year of the Reign of Our Sovereign Lord, *George* the Third, King of Great-Britain, &c. *Annoque Domini,* 1775.
 By His Honour's Command,     JONTH. TRUMBULL."
  *George Wyllys,* Secr.

"MATTHEW GRISWOLD, Esquire, Captain-General and Commander-in-Chief in and over the State of *Connecticut* in *America.* To *Nathaniel Root,* Gent. *Greeting.* You being, by the General Assembly of this State, accepted to be Lieutenant of the Seventh Company or Train-Band in the fifth Regiment in this State; reposing Special trust," &c. . . . . " Given under my Hand, and the public Seal of this State, at *Hartford,* the 19th Day of *May,* A. D. 1785.     MATTHEW GRISWOLD."
 By His Excellency's Command.
  *George Wyllys,* Secr.

SAMUEL HUNTINGTON, Esquire, Captain-General and Commander-in-Chief in and over the State of *Connecticut* in *America.* To *Ancel Stocking,* Gent. *Greeting.* You being, by the General Assembly of this State, accepted to be Lieutenant of the Seventh Company of Militia in the Sixth Regiment in said State; reposing special trust," &c. . . . . " Given under my Hand, and the public Seal of this State, at *Hartford,* the 22nd Day of *May,* A. D. 1790.
 By His Excellency's Command,    SAML. HUNTINGTON."
  *George Wyllys,* Secr.        R.

*Litchfield,*
June, 1846.

Monson
*v.*
Hunt.

*Litchfield,*
*June, 1846.*

Monson
*v.*
Hunt.

affecting the public or strangers, who are not required to look further into his rights of office, may be regarded as the acts of an officer *de jure* also.   We cannot, in this collateral way, and under a process to which neither of the pretending claimants are parties, settle the conflicting claims of *Rogers* and *Hollister* to the command of this regiment.   *The People* v. *Collins,* 7 *Johns. R.* 549.   *McInstry* v. *Tanner,* 9 *Johns. R.* 125.   *Wilcox* v. *Smith,* 5 *Wend.* 231.   *Fowler* v. *Bebee,* 9 *Mass. R.* 231.   *The King* v. *Lisle, Andrews,* 163.

As to the second reason ; we think very certainly, if the proceedings set forth in this motion are true, that, unexplained, they disclose a strong case of illegality, which, had they been known to the General Assembly, would have defeated the defendant's claims to a commission.   But it was for the General Assembly alone to sit in judgment upon them.   The law requires that the choice of commissioned company officers should be approved by the legislature, before they are commissioned by the governor.   The course of proceeding by the General Assembly, in such cases, has been sanctioned, by an immemorial practice, which we recognize.   It is the common law of that body.   The militia officer who superintends the choice of company officers, makes his return of the facts, as was done in this case, to the General Assembly.   This return is referred, by the Assembly, to a committee appointed to receive military returns, whose duty it is to investigate all the circumstances connected with the election of such officers, hear all remonstrances, and decide in view of the whole ground;   and such persons as this committee believe to have been legally chosen as militia officers, it reports as entitled to commissions.   If this report is approved, the General Assembly, by resolution, requests the governor to commission the officers therein named.   Such course, we must presume, has been taken, in the present case ;   and that the election of this captain has been pronounced legal and valid, by the only tribunal, which, in our opinion, has the power to decide.   Of this the commission is evidence.

The  evidence objected to, by the defendant, in the superior court, was correctly rejected;   and no new trial is advised.

In this opinion the other Judges concurred.

New trial not to be granted.